## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**Reyanna Banks,**

        **Plaintiff,**

**v.**

**BTF3, LLC d/b/a Paper Moon, Imaginary Images, Inc. d/b/a Paper Moon, William Pyliaris,**

        **Defendant.**

**Case No. 3:18-cv-00093**

## DECLARATION OF TROY POTEET

I, Troy Poteet, do hereby declare and affirm as follows:

1.      My name is Troy Poteet, and I am over twenty-one (21) years of age, have never been convicted of a felony, and am otherwise fully competent to make this affidavit and to testify in any court of law. The facts set forth herein are true and correct and based upon my personal knowledge.

2.      I am a resident of the Commonwealth of Virginia.

3.      I am employed by Pyliaris Corporation, located at 218 East Main Street, Richmond, Virginia 23219, as Area Supervisor. Pyliaris Corporation is a company which provides consulting management services to Arkesia, Inc. d/b/a Club Rouge; Circle 2, Inc. d/b/a Daddy Rabbits; Circle 2, Inc. d/b/a Candy Bar; Imaginary Images, Inc. d/b/a Papermoon; BTF3 LLC d/b/a Papermoon; and M.G.B., Inc. d/b/a Pure Pleasure. As Area Supervisor, my job duties include contract procurement including final review and/or execution of contracts on behalf of the managed companies.



EXHIBIT

4.      On or about January 10, 2018, Ms. Reyanna Banks signed and submitted a Business Status Selection by Entertainer and Offer of Employment and an Entertainer Licensing Agreement. A true and accurate copy of the Business Status Selection by Entertainer and Offer of Employment and an Entertainer Licensing Agreement are attached hereto as Exhibit 1.

5.      The Entertainer Licensing Agreement signed by Ms. Banks includes an arbitration provision.

6.      In the agreement, Ms. Banks signed her name as "Reyanna Bank." When she signed the agreement, a copy of her Virginia driver's license was submitted, which reflects that her legal name is "Reyanna Banks." A true and accurate copy of Ms. Banks's Driver's License is attached.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 17 day of April, 2018, in Richmond, Virginia.

Troy Poteet

4833-5798-6657, v. 2

2

**EXHIBIT**

tabbies

## BUSINESS STATUS SELECTION BY ENTERTAINER AND OFFER OF EMPLOYMENT

As a result of our review of your application, interview, and audition, the Club would like to offer you the opportunity to perform here. There are different business arrangements under which you can perform, and we want **YOU** to make the decision as to the way that **YOU** want to perform at this Club.  You can do so either as: 1) an INDEPENDENT PROFESSIONAL ENTERTAINER; or 2) an EMPLOYEE.

We have listed below some of the general distinctions between performing here as an Independent Professional Entertainer or as an Employee.  This document is not intended to provide legal or tax advice, and is merely a summary of general information.

WE DO NOT, HOWEVER, WANT YOU TO MAKE ANY RASH OR UNINFORMED DECISIONS CONCERNING THE MATTERS SET OUT IN THIS DOCUMENT.  YOU ARE ENCOURAGED TO CONSULT WITH ANY PERSONS OF YOUR CHOICE, INCLUDING ATTORNEYS, ACCOUNTANTS AND/OR TAX PROFESSIONALS, PRIOR TO MAKING THIS SELECTION.  IN ADDITION, IF YOU WOULD LIKE TO SEE A COPY OF THE CONTRACT THAT THE CLUB USES FOR INDEPENDENT PROFESSIONAL ENTERTAINERS (CALLED AN "ENTERTAINER LICENSING AGREEMENT") PRIOR TO MAKING YOUR DECISION, PLEASE JUST ASK AND WE WILL BE HAPPY TO PROVIDE YOU WITH A COPY TO REVIEW.  FEEL FREE TO TAKE THESE DOCUMENTS HOME AND REVIEW THEM AT YOUR LEISURE BEFORE MAKING YOUR CHOICE.

After reviewing this information, we would like you to select the circumstances under which you want to perform at this Club.  The Club management expresses <u>no opinion</u> on this matter, and we will be happy to have you perform here under <u>either</u> structure.  This is <u>your choice</u> to make.

The Club will rely upon the selection you have made at the end of this document, and will offer you the opportunity to enter into the business arrangement that **YOU** selected.

Here are the general differences of the two distinct arrangements under which you can perform at this Club:

 INDEPENDENT PROFESSIONAL      VS.      **EMPLOYEE STATUS**
ENTERTAINER STATUS

| | |
|---|---|
| 1.      As an Independent Professional Entertainer, you will enter into a written contract with the Club which will be for a certain period of time; which will specify in writing the rights, duties and obligations of both you and the Club; and which cannot be changed except upon the mutual agreement of both you and Club management.  The Club will not be able to terminate your contract during the specified period except upon the limited reasons identified in the contract. | 1.      As an Employee, you will not have a contract with the Club. Rather, your employment will be "at will," meaning that your employment can be terminated by the Club at any time, without cause and without prior notice. The Club will have the right to change the terms of your employment at its discretion at any time. |
| 2.      As an Independent Professional Entertainer, all of your earnings will come directly from your customers.  YOU WILL <u>NOT</u> RECEIVE ANY PAY FROM THE CLUB, EITHER BY WAY OF AN HOURLY WAGE OR A SALARY.  You will charge your customers for your dance performances, and the money that you receive from them – either by way of mandatory charges for entertainment ("Entertainment Fees," discussed in number 4 below) or tips (discussed in number 3 immediately below) – will be your money that you will be able to take home at the end of the day. You will, however, be required to pay certain fees to the Club for having the right to perform here. You can review a copy of the contract that the Club uses in order to see the current amount of those fees. | 2.      As an Employee, you will be paid every other Friday on an hourly basis at a rate equal to the current applicable tip—credited minimum wage.  Under such an employment relationship, you would be paid, in accordance with Section 203(m) of the Fair Labor Standards Act and applicable state law, the legally permitted "tip-credited" wage ($2.13 per hour at the time of the drafting of this document, and as adjusted by applicable law).  The Club would then increase your wages by taking the allowable tip-credit ($5.12 per hour at the time of the drafting of this document, and as adjusted by applicable law), which cannot exceed the amount of tips actually received and kept by you. If, in a workweek, you did not earn at the least the full minimum wage through wages and retained tips ($7.25 per hour at the time of the drafting of this document, and as adjusted by applicable law), the Club would pay you the difference so that you would earn the full minimum wage for each hour worked. These "tip credit" |



provisions would not apply unless you were informed of them.

3.      As an Independent Professional Entertainer, all tips that you earn (gratuities paid by customer *over and above* the established Entertainment Fees, as well as stage tips) are yours to keep. You will not be required to share your tips, or "tip out," to anyone.

3.      As an Employee, you would be entitled to retain all tips that you collect (gratuities paid by customers *over and above* the established Entertainment Fees, as well as stage tips, but not the mandatory Entertainment Fees you charge for personal performances -- see number 4 below), although you will be required to pay 15% of your tips into a "tip pool" that would be distributed to non-dancer regularly tipped employees.

4.      As an Independent Professional Entertainer, the Entertainment Fees you charge your customers belong to you, and are yours to keep subject only to certain licensing fees.

4.      As an Employee, the Entertainment Fees you charge customers belong to the Club. You will have to turn them over to management before the end of your shift.

5.      As an Independent Professional Entertainer, you will be responsible for taking care of and paying all taxes and other withholdings due on your income.

5.      As an Employee, the Club will take out of your pay all taxes and other withholdings required by law.

6.      As an Independent Professional Entertainer, you keep track of your own income. You do not report your Entertainment Fees or tip income to the Club (although the Club will be tracking the Entertainment Fees that you earn). You can take tax deductions for travel, advertising, makeup, costumes, props, tanning, health clubs, cosmetic surgery, etc., as allowed by law.

6.      As an Employee, you must, by law, report ALL of your tip income to the Club. You cannot deduct from your taxes the incidental expenses of your employment. In addition, the Club is required by law to pay to the IRS, out of the wages due to you, taxes owed on your tip income. If you make a substantial amount in tips, this could then result in you receiving a "zero" paycheck. If you have any questions about this, consult an accountant.

7.      As an Independent Professional Entertainer, you may perform wherever you choose, and may perform at other clubs while you are under contract with this Club.

7.      As an Employee, you will be prohibited from performing at other establishments.

8.      As an Independent Professional Entertainer, you will determine the days and times you perform at the Club. In addition, you can perform as many hours per day as you desire, although you will receive no "overtime" pay from the Club.

8.      As an Employee, the Club will select your schedule (both days and times), with input from you. The final decision of your work schedule, however, will be made by Club management based upon consideration of its business needs, such as the expected number of entertainers and guests, etc. The Club will generally not permit you to work any "overtime." However, at the discretion of management you may be required to work overtime, and you will be paid time and one-half for any excess hours that you work as required by law.

9.      As an Independent Professional Entertainer, whether you take breaks, when you take your breaks, and the number and duration of any breaks, is totally up to you. The only restriction on your breaks is that you should not, obviously, take a break during your stage performances.

9.      As an Employee, the Club will determine the time, number and duration of your breaks, consistent with state law.

10.     As an Independent Professional Entertainer, you can perform for whomever you choose, and can reject any customers you want.

10.     As an Employee, you will be required to perform for all customers.

RB

11.     As an Independent Professional Entertainer, you will never be required by the Club to give "free" dances to anyone.

11.     As an Employee, you may, at the direction of management, be required to give "free" dances to certain customers.

12.     As an Independent Professional Entertainer, you will never be required to engage in any Club promotions or advertising.

12.     As an Employee, you may, at the discretion of management, be required to participate in various Club promotions and advertising, both on and off the Club premises.

13.     As an Independent Professional Entertainer, you will have the freedom to choose your own costumes, and you will be required to provide your own costumes. However, you will be expected to appear in costuming consistent with industry standards for professional entertainers performing in upscale, high-end, entertainment facilities.

13.     As an Employee, you will be required to wear the costumes selected by the Club, which will provide to you, free of charge, two costumes every two months and a pair of performance footwear every three months.

14.     As an Independent Professional Entertainer, you will determine your own appearance.

14.     As an Employee, your appearance must comply with Club standards. Management will tell you how to wear your hair, and how your makeup should look.

15.     As an Independent Professional Entertainer, you will not be given any training. You will be expected to come to the Club with the necessary skills to perform as a professional exotic dance entertainer. You may perform in any lawful manner of your own choosing and you will not have to meet any type of "performance standards" set by the Club.

15.     As an Employee, you will be required to undergo dancer training, you must perform consistent with the standards set in that training, and you will be expected to meet certain dance minimum quotas in order to be able to keep your job.

16.     As an Independent Professional Entertainer, if you are injured at the Club, you will not be covered by Workers' Compensation Insurance, but you can sue the Club, if it is at fault, and your only limits of recovery are those that may be imposed by state law.

16.     As an Employee, if you are hurt at work your sole recourse against the Club, under most circumstances, will be for "Worker's Compensation" benefits. You will not have to prove the Club was at fault, but you will be subject to the limits of that coverage.

17.     As an Independent Professional Entertainer, you will not be entitled to unemployment compensation benefits either if your contract expires or the Club terminates it early for any of the reasons listed in the agreement.

17.     As an Employee, if you are fired or laid off, you may be entitled – if you have worked a sufficient period of time and satisfied other legal requirements – to unemployment compensation benefits. These benefits are for a fixed period of time and are set by law.

18.     As an Independent Professional Entertainer, the Club will not offer you any form of health insurance.

18.     As an Employee, if the Club is at any time required to offer certain of its employees health insurance and you qualify, you may, but need not, accept such health insurance so long as you agree to pay the policy premiums up to a maximum of 8% of your total household income (wages *and* tips).

19.     By selecting Independent Professional Entertainer status, you will be acknowledging that you understand that you are not entitled to benefits under the Fair Labor Standards Act (minimum wage and overtime laws, among other things), the National Labor Relations Act, Equal Employment Opportunity laws, and other laws that protect employees.

19.     As an Employee, you will be entitled to certain legal protections under the Fair Labor Standards Act, the National Labor Relations Act, the Equal Employment Opportunity Act, and other laws that protect employees. You can find out about your rights as an employee by going to, among other places, the websites at www.dol.gov/esa/whd/flsa and www.doli.virginia.gov, and/or by reviewing the employment law posters that are displayed in the Club (if you have any questions as to where they are located, please ask a manager and he or she will direct you to them). You may also be

entitled, depending upon the amount of time you work, to other employee benefits. If you have any questions about this, ask a manager.

(THIS SPACE INTENTIONALLY LEFT BLANK)

AFTER HAVING REVIEWED THE ABOVE INFORMATION AND HAVING CONSIDERED THESE MATTERS:

___ **I desire to perform as an** <u>Independent Professional Entertainer</u>

In light of your selection to perform as an Independent Professional Entertainer, we want to be sure that you are aware of the significance of the choice you have made.  Consequently, **DO NOT SIGN THIS DOCUMENT UNLESS YOU FULLY UNDERSTAND AND AGREE TO THE FOLLOWING STATEMENTS:**

> By selecting to perform at this Club as an Independent Professional Entertainer, I acknowledge and represent that I have been afforded the opportunity to work at the Club as an employee-entertainer. However, after careful consideration I have willingly and intentionally chosen NOT to do so.  In fact, I specifically REJECT the offer of employment extended to me by the Club, and I DECLINE and REFUSE the opportunity to enter into the type of employment arrangement discussed here.  I desire, instead, to perform as an Independent Professional Entertainer under the terms set out in this document.  I have made this choice of my own free will, and no one has forced, coerced, or threatened me to make this selection.

> Accordingly, I hereby REJECT, DISAVOW, RENOUNCE AND REPUDIATE, any and all benefits that employee status may provide to me and any and all obligations that it may impose upon me.

I further understand and agree that the Club will rely on the statements, acknowledgements, representations, and the choice, that I have made in this document.

___ **I desire to work at the Club as an** <u>Employee entertainer</u>

_____
Entertainer's signature

_____
Entertainer's name (please print)

Reyana Bank

DATED: 01 / 10 / 2018

RB

# ENTERTAINER LICENSING AGREEMENT

**NOTICE: THIS IS A LEGAL CONTRACT. DO NOT SIGN IT UNLESS YOU _FULLY_ UNDERSTAND AND AGREE TO ALL OF ITS TERMS (AND PLEASE NOTE THAT THIS CONTRACT CONTAINS AN AGREEMENT TO INDIVIDUALLY ARBITRATE DISPUTES AND CLAIMS, WHICH IS FOUND IN PARAGRAPH 21). IF YOU HAVE ANY QUESTIONS, FEEL FREE TO TALK TO THE CLUB'S GENERAL MANAGER. WE SUGGEST THAT BEFORE SIGNING, YOU HAVE THIS CONTRACT REVIEWED BY AN ATTORNEY, ACCOUNTANT, OR OTHER PERSON OF YOUR CHOICE. IN ADDITION, EVEN IF YOU PREVIOUSLY SIGNED A SIMILAR CONTRACT, READ THIS ONE OVER CAREFULLY AS IT MAY BE DIFFERENT FROM THOSE YOU MAY HAVE SIGNED IN THE PAST.**

This Entertainer Licensing Agreement ("Agreement") is entered into by the "Club" and "Entertainer" (the "Parties," with each being a "Party"), to permit Entertainer to use certain portions of the "Premises." The "Club," "Entertainer," and "Premises" are identified on the last page of this Agreement.

## PURPOSE OF AGREEMENT:

The Club operates an entertainment facility on the Premises. Entertainer, who is engaged in the independently established trade and occupation of professional exotic dance entertainers and who runs her own business that provides such entertainment services and is licensed to do so (if legally required), desires to obtain the right to use certain areas of the Premises for her professional activities.

## TERMS OF AGREEMENT:

Club and Entertainer agree as follows:

1. **Licensed Use of The Premises/Term.** The Club grants to Entertainer the right, during normal business hours, to jointly, along with other entertainers, use the stage areas and certain other portions of the Premises designated by the Club (this is referred to as a "licensing" arrangement, with the Entertainer being the licensee). This Agreement begins today and ends on the earlier of: A) October 31, 2018; or B) a termination date as provided for in paragraph 18.

2. **Club's Additional Obligations.** The Club shall:

   A. Provide music for use on the Premises, lighting, and dressing room facilities, and pay all copyright fees due relative to that music; and

   B. Reasonably advertise the business for the benefit of both Entertainer and the Club. This does not, however, prohibit Entertainer from advertising her services in any manner she so desires.

3. **Assignment of Rights.** This Agreement is based upon Entertainer's personal skills and artistic talent. Consequently, Entertainer has no right to assign any of her rights or obligations in this Agreement to any other person without the written consent of the Club. However, Entertainer has the right to substitute the services of any entertainer who has also entered into an Entertainer Licensing Agreement with the Club.

4. No Underage Drinking of Alcohol. Zero tolerance for any ABC alcohol violations on premises,

5. **Use of Premises.** Entertainer agrees to:

   A. Perform clothed, semi-nude ("topless") , and to perform in stage promotion rotations in order to ensure a continuous entertainment performance on the Premises;

   B. Obtain, keep in effect, and have in her possession at all times while she is on the Premises, any and all required licenses and/or permits;

   C. Read, understand, comply with, and not violate, any and all laws that apply to Entertainer's conduct while on the Premises, and provide only lawful entertainment services (violations of the law are beyond the scope of authority under, and constitute a breach of, this Agreement);

   D. Maintain accurate daily records of all income, including tips, earned while performing on the Premises, in accordance with all taxation laws; and

   E. Pay for any damages she causes to the Premises and/or to any of the Club's personal property.

6. **Compliance with Rules.** The Club may impose rules upon the use of the Premises by Entertainer as the Club deems necessary in order to ensure that: A) no damage to the Club's property occurs; B) the Premises are used in a safe fashion for the benefit of all entertainers, patrons, employees and others; and C) no violations of the law occur. Entertainer agrees to comply with all such rules.

7. **Nature of Performance and Costuming.** Other than to ensure compliance with all applicable laws, the Club shall have no right to direct or control the nature, content, character, manner or means of Entertainer's entertainment

Page 1 of 8
Initials: _K.B_

Date: _01/10/2018_

services, her performances, or the costumes/wearing apparel she selects. Entertainer shall have full control over all such matters. Entertainer shall supply and exclusively pay for all of her own costumes and wearing apparel (which must comply with all applicable laws and shall be in accordance with industry standards for professional entertainers performing in upscale, high-end, entertainment facilities), and all of her props or other equipment that she may use during, or as a part of, her performances.

8. **Intellectual Property.** Entertainer retains all intellectual property rights to her performances and likeness, unless assigned by her in writing.

9. **Nature of Business.** Entertainer understands: A) That the nature of the Club's business is adult entertainment; and B) that she may be subjected to partial or full nudity (depending on the law), explicit language, advances by customers, depictions or portrayals of a sexual nature, and to similar types of behavior. Entertainer represents that she is not and will not be offended by, and she assumes any and all risks associated with, being subjected to such matters.

10. **Privacy.** Privacy and personal safety are important concerns to Entertainer. Accordingly, the Club shall not knowingly disclose to any persons who are not associated with the Club, Entertainer's legal name, address, email address, or telephone number, except upon written authorization of the Entertainer or as required by law.

11. **Entertainment Fees.** In consultation with the entertainers who are parties to Entertainment Licensing Agreements with the Club, the Club shall establish fixed fees as the price for certain personal performances ("Entertainment Fees"). Entertainer agrees not to charge a customer less than the fixed price for any such performance unless the Entertainer notifies the Club in writing of any charges to her customers of a lower amount. Nothing in this Agreement, however, limits Entertainer from receiving tips over-and-above the established price for such performances (Entertainer is not required to share her tips with anyone else). THE PARTIES SPECIFICALLY ACKNOWLEDGE AND AGREE THAT ENTERTAINMENT FEES ARE NEITHER TIPS NOR GRATUITIES, BUT ARE, RATHER, MANDATORY CHARGES TO THE CUSTOMER AS THE PRICE FOR PURCHASING A PERSONAL ENTERTAINMENT PERFORMANCE.

12. **Business Relationship of Parties.**

   A. Entertainer acknowledges that the Club has offered to hire her as an employee, but that she has **REJECTED** that offer and desires, instead, to perform as a licensee under the terms of this Agreement.

   B. The Parties acknowledge that the business relationship created between them is that of a licensing arrangement for the joint and non-exclusive use of certain parts of the Premises (meaning that other entertainers are also parties to licensing agreements to use parts of the Premises at the same time). THE PARTIES SPECIFICALLY DISAVOW ANY EMPLOYMENT RELATIONSHIP BETWEEN THEM, and this Agreement shall not be interpreted as creating an employer/employee relationship or any contract for employment. ENTERTAINER UNDERSTANDS THAT THE CLUB WILL NOT PROVIDE TO HER ANY WAGE (WHETHER HOURLY OR OTHERWISE), OVERTIME PAY, EXPENSES, OR OTHER EMPLOYEE-RELATED BENEFITS.

   C. The Club and Entertainer acknowledge that if the relationship between them was that of employer and employee, the Club would be required to collect, and would retain, all Entertainment Fees paid by customers to Entertainer – ENTERTAINER SPECIFICALLY ACKNOWLEDGING THAT IN AN EMPLOYER/EMPLOYEE RELATIONSHIP ALL ENTERTAINMENT FEES WOULD BE, BOTH CONTRACTUALLY AND AS A MATTER OF LAW, THE PROPERTY OF THE CLUB AND NOT THE PROPERTY OF ENTERTAINER. ENTERTAINER'S RIGHT TO OBTAIN AND KEEP ENTERTAINMENT FEES IS SPECIFICALLY CONTINGENT UPON THE BUSINESS RELATIONSHIP OF THE PARTIES BEING THAT OF A LICENSING STRUCTURE.

   Under an employment relationship, Entertainer would be paid, in accordance with Section 203(m) of the Fair Labor Standards Act and applicable state law, the legally permitted "tip-credited" wage ($2.13 per hour at the time of the drafting of this Agreement, and as adjusted by applicable law). The Club would then increase Entertainer's wages by the amount of tip income she earned and retained, up to the allowable tip credit ($5.12 per hour at the time of the drafting of this Agreement, and as adjusted by applicable law), which could not exceed the amount of tips actually and ultimately received and retained by Entertainer. If, in a workweek, Entertainer did not earn at least the full minimum wage through wages and retained tips, the Club would pay Entertainer the difference so that she earned the full minimum wage for each hour worked ($7.25 per hour at the time of the drafting of this Agreement, and as adjusted by applicable law). These "tip credit" provisions would not apply unless Entertainer was informed of them; this document serving as such notice. Entertainer would further be entitled to all retain tips – *but not Entertainment Fees* – that she

Page 2 of 8
Initials: _K_ _AB_

Date: 01/10/2018

may collect, although she would be required to pay 15% of her tips into a "tip pool" that would be distributed to non-dancer regularly tipped employees.

The Parties additionally acknowledge that were the relationship between them to be that of employer/employee, Entertainer's employment would be "at will" (she could be fired at any time without cause and without prior warning), and the Club could control, among other things, Entertainer's: Work schedule and hours of work; job responsibilities; physical appearance (such as make-up, hairstyle, etc.); costumes/wearing apparel; music; work habits; the selection of her customers; the nature, content, character, manner and means of her performances; and her ability to perform at other locations.

ENTERTAINER REPRESENTS THAT SHE DESIRES TO BE ABLE TO MAKE ALL OF THESE CHOICES HERSELF, WITHOUT THE CONTROL OF THE CLUB, AND THE PARTIES AGREE THAT ALL SUCH DECISIONS ARE EXCLUSIVELY RESERVED TO BE MADE BY HER.

ENTERTAINER FURTHER REPRESENTS THAT SHE DOES NOT DESIRE TO PERFORM AS AN EMPLOYEE OF THE CLUB UNDER THE TERMS OUTLINED ABOVE, BUT, RATHER, DESIRES TO PERFORM AS A LICENSEE CONSISTENT WITH THE OTHER PROVISIONS OF THIS AGREEMENT.

C.

D. If any court, tribunal, arbitrator, or governmental agency determines that the relationship between the Parties is one of employment and that Entertainer is then entitled to the payment of wages from the Club, all of the following shall apply:

    i.    In order to comply with applicable tax laws and to assure that the Club is not unjustly harmed and that Entertainer is not unjustly enriched by the Parties having financially operated pursuant to this Agreement, the Parties agree that Entertainer shall surrender, reimburse and remit to the Club, all Entertainment Fees received by her during all periods in which the court, tribunal, arbitrator, or governmental agency finds her to have been the employee of the Club (the "Reclassification Period") - all of which would otherwise have been collected and kept by the Club had they not been retained by Entertainer under the terms of this Agreement;

    ii.    Entertainer shall immediately remit to the

Club 15% of all tips that she earned during the Reclassification Period, which shall be distributed to non-dancer regularly tipped employees, and shall provide to the Club a signed and legally compliant statement of all tip income earned by her during the Reclassification Period.

    iii.    Any Entertainment Fees from the Reclassification Period that Entertainer does not return to the Club shall be deemed service charges paid by the customer and shall be accounted for by the Club as such. The Club shall then be entitled to a credit against any wages due in the amount of the Entertainment Fees retained by Entertainer, and such fees shall therefore constitute wages paid from the Club to Entertainer. In such circumstances, the Club shall immediately submit to the IRS and applicable state taxing authorities all necessary filings regarding such income; and

    iv.    The relationship of the Parties shall immediately convert to an employment arrangement under the terms in subparagraph 12(C).

E. If at any time Entertainer believes that - - irrespective of the terms of this Agreement - - she is being treated as an employee by the Club or that her relationship with the Club is truly that of an employee, Entertainer shall immediately, but in no event later than three business days thereafter: i) provide notice to the Club in writing of her demand to be fully treated as an employee consistent with the terms of subparagraph 12(C) and applicable law; and ii) begin reporting all of her tip income to the Club on a daily basis (such tip reporting being legally required of all regularly tipped employees). The Club shall then convert Entertainer to an employee consistent with the provisions of subparagraph 12(C) of this Agreement and the "Employee Status" provisions of the Business Status Selection by Entertainer and Offer of Employment document previously signed by Entertainer.

F. If at any time during this Agreement, Entertainer desires to convert to being an employee-entertainer, Entertainer shall notify the Club of her desire in writing, and the Club shall thereafter convert her to an employee consistent with the provisions of subparagraph 12(C) of this Agreement and the "Employee Status" provisions of the Business Status Selection by Entertainer and Offer of Employment document previously signed by Entertainer.

G. If at any time Entertainer contends that she should not be bound by the terms of this Agreement and that

Page 3 of 8
Initials: _S.B_

Date: 01/10/2010

she is or was entitled to the payment of wages during any period of time that she performed at the Club, Entertainer shall, contemporaneously with making such a demand, provide to the Club a signed and legally compliant statement of all tip income earned by her during the time she claims to have been entitled to the payment of wages.

13. <u>Taxes</u>. Entertainer is exclusively responsible for, and shall pay, all applicable taxes and contributions imposed upon any income she earned while performing on the Premises. Entertainer shall timely file all required income tax returns.

14. <u>Scheduling of Performance Dates</u>. No later than the 15th day of each calendar month, Entertainer shall provide to the Club a schedule of the entertainment sessions that she intends to perform during the following month (each such entertainment session being one "Show Date"). The Club shall make the licensed portions of the Premises available to Entertainer during the dates and times she selects, subject only to space availability. Entertainer may be permitted perform on the Premises during unscheduled Show Dates, subject to space availability and the terms of this Agreement.

15. <u>License Fees</u>. Entertainer shall pay licensing fees ("Licensing Fees") to the Club in amounts stated in Exhibit "A." Licensing Fees shall be paid immediately upon completion of the Show Date for which they are due.

16. <u>Material Breach by Club</u>. The Club materially breaches this Agreement by failing to provide to Entertainer the licensed portions of the Premises on any day she schedules herself to perform, or by willfully violating any law governing the operation of the Club. The Club shall not be liable for acts of nature or other causes beyond its reasonable control.

17. <u>Material Breach by Entertainer</u>. Entertainer materially breaches this Agreement by failing to maintain any and all required licenses and/or permits; willfully violating any law while on the Premises; failing to appear for a scheduled Show Date on two or more occasions in any one calendar month; failing to pay any Licensing Fees when due; or claiming the business relationship with the Club as being other than that of a licensing arrangement.

18. <u>Termination/Breach</u>. Either Party may terminate this Agreement, without cause, upon thirty (30) days' notice. Upon material breach, the non-breaching Party may terminate this Agreement upon twenty-four (24) hours' notice or as otherwise may be provided by law. Nothing in this paragraph, however, shall allow Entertainer to perform on the Premises without a valid license or permit, if applicable, or to continue to engage in conduct

in violation of any laws.

19. <u>Severability</u>. If any provision of this Agreement is declared to be illegal or unenforceable, this Agreement shall, to the extent possible, be interpreted as if that provision was not a part of this Agreement; it being the intent of the Parties that such part be, to the extent possible, severable from this Agreement as a whole. Nevertheless, in the circumstance of a judicial, arbitration, or administrative determination that the business relationship between Entertainer and the Club is something other than that of a licensing structure, the relationship between Entertainer and the Club shall be governed by the provisions of subparagraphs 12(C) and 12(D).

20. <u>Governing Law</u>. This Agreement shall be interpreted pursuant to the laws of the State of Virginia, except as may be preempted by the Federal Arbitration Act.

21. <u>ARBITRATION/WAIVER OF CLASS AND COLLECTIVE ACTIONS/ATTORNEY FEES AND COSTS</u>.

<u>NOTE</u>: PROCEEDINGS IN ADMINISTRATIVE AGENCIES, SUCH AS THE NATIONAL LABOR RELATIONS BOARD, THE DEPARTMENT OF LABOR, AND THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ARE <u>NOT</u> GOVERNED OR BARRED BY THE PROVISIONS IN THIS PARAGRAPH 21. <u>ENTERTAINER MAY FILE ANY CLAIM SHE WANTS WITH ANY ADMINISTRATIVE AGENCY REGARDLESS OF ANYTHING CONTAINED IN THIS PARAGRAPH 21.</u>

IN ORDER TO RESOLVE DISPUTES THAT MAY ARISE OUT OF ENTERTAINER PERFORMING AT THIS CLUB, THE CLUB HAS ESTABLISHED A PRIVATE "ARBITRATION" PROCESS SET OUT IN THIS PARAGRAPH 21. ARBITRATION IS SIMILAR TO A COURT PROCEEDING BUT IT'S LESS FORMAL, LESS TIME-CONSUMING, AND CAN BE LESS EXPENSIVE THAN GOING TO COURT. THROUGH ARBITRATION, THE PARTIES AGREE TO HAVE THEIR NON-ADMINISTRATIVE DISPUTES RESOLVED BY AN "ARBITRATOR" (USUALLY AN ATTORNEY, WHO IS SOMETIMES A RETIRED JUDGE), <u>INSTEAD OF BY A COURT OR JURY</u>.

THIS IS THE ARBITRATION PROCESS THAT WILL GOVERN FOR ANY NON-ADMINISTRATIVE DISPUTES:

Date: 1/10/2018

A. ANY CONTROVERSY, DISPUTE, OR CLAIM ARISING OUT OF, OR RELATING IN ANY WAY TO, THIS AGREEMENT, ITS TERMINATION, ENTERTAINER PERFORMING AND/OR WORKING AT THE CLUB AT ANY TIME, OR THE TERMINATION OF SUCH PERFORMANCES OR WORK (COLLECTIVELY IN THIS PARAGRAPH 21, A "CLAIM" OR "CLAIMS"), SHALL BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION IN ACCORDANCE WITH THE FEDERAL ARBITRATION ACT (THE "F.A.A.").

THIS REQUIREMENT TO ARBITRATE ANY AND ALL NON-ADMINISTRATIVE CLAIMS APPLIES REGARDLESS OF WHETHER:

i) SUCH A CLAIM IS BASED UPON CONTRACT, COMMON LAW, EQUITY, STATUTE, REGULATION, ORDINANCE, OR OTHERWISE; AND

ii) A CLAIM BY ONE PARTY IS ONLY AGAINST THE OTHER PARTY OR IS AGAINST PERSONS OR ENTITIES ASSOCIATED IN ANY WAY WITH THE OTHER PARTY (INCLUDING BUT NOT LIMITED TO PAST, PRESENT, AND FUTURE OWNERS, DIRECTORS, MANAGERS, OFFICERS, EMPLOYEES, CONSULTANTS, LANDLORDS, LICENSORS, AND/OR AGENTS, WITH EACH SUCH INDIVIDUAL AND ENTITY ALSO BEING CONSIDERED TO BE A "PARTY" FOR PURPOSES OF THIS PARAGRAPH 21).

THE ARBITRATION PROCEEDING SHALL OCCUR IN THE STATE OF VIRGINIA, AND SHALL BE ADMINISTERED BY AN INDEPENDENT NEUTRAL ARBITRATOR AGREED UPON BY THE PARTIES, WHO SHALL BE PERMITTED TO AWARD -- SUBJECT ONLY TO THE RESTRICTIONS CONTAINED IN THIS PARAGRAPH 21 -- ANY RELIEF AVAILABLE IN A COURT.

THE PARTIES WAIVE THE RIGHT TO LITIGATE ALL SUCH NON-ADMINISTRATIVE CLAIMS IN A COURT OF LAW, AND WAIVE THE RIGHT TO TRIAL BY JURY. THESE WAIVERS APPLY TO ALL STATUTORY CLAIMS OF EVERY CONCEIVABLE KIND OR NATURE WHATSOEVER (EXCEPT, AGAIN, TO CLAIMS IN ADMINISTRATIVE AGENCIES WHICH, AS REFERENCED IN THE "NOTE"

ABOVE, ARE NOT GOVERNED BY THIS PARAGRAPH 21), INCLUDING BUT NOT LIMITED TO CLAIMS THAT SEEK WAGES AND/OR OTHER EMPLOYMENT BENEFITS, OR THAT ALLEGE HARASSMENT, DISCRIMINATION, OR THE UNLAWFUL PROVIDING OF ALCOHOL ("DRAM SHOP" LIABILITY).

NO DEMAND FOR ARBITRATION MAY BE MADE AFTER THE DATE WHEN THE COMMENCEMENT OF LEGAL OR EQUITABLE PROCEEDINGS BASED ON SUCH A CLAIM WOULD BE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

SUBJECT ONLY TO THE PROVISIONS OF THE F.A.A. AND THIS PARAGRAPH 21, THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE FORMATION, VALIDITY, INTERPRETATION, AND/OR ENFORCEABILITY OF ANY PART OF THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISIONS CONTAINED IN THIS PARAGRAPH 21 AND THE SCOPE OF THESE ARBITRATION PROVISIONS.

EACH PARTY SHALL INITIALLY BE RESPONSIBLE FOR ITS/THEIR OWN ATTORNEY FEES AND OUT-OF-POCKET COSTS ASSOCIATED WITH THE ARBITRATION PROCEEDING. THE ACTUAL COSTS OF ARBITRATION (THE ARBITRATOR'S FEES AND RELATED EXPENSES) SHALL BE BORNE EQUALLY BY THE ENTERTAINER AND THE CLUB UNLESS APPLICABLE LAW REQUIRES THE ARBITRATOR TO IMPOSE A DIFFERENT ALLOCATION.

EITHER PARTY MAY REQUEST AN ARBITRATOR EXPERIENCED IN THE ADULT ENTERTAINMENT INDUSTRY. THE PROCEEDINGS SHALL BE CONDUCTED IN ACCORDANCE WITH THAT LEVEL OF DUE PROCESS REQUIRED FOR ARBITRATIONS. THE ARBITRATOR'S DECISION (WHICH IS TO BE IN WRITING) SHALL BE FINAL, SUBJECT ONLY TO REVIEW UNDER THE F.A.A. OR AS PROVIDED FOR IN THIS PARAGRAPH 21. ANY AWARD BY THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION.

Date: 10/20/18

B. ENTERTAINER AND THE CLUB AGREE THAT ANY AND ALL CLAIMS THAT THEY MAY HAVE AGAINST THE OTHER (AND/OR AGAINST ANY PERSONS OR ENTITIES ASSOCIATED WITH THE OTHER), SHALL BE BROUGHT AND MAINTAINED INDIVIDUALLY BY THAT PARTY IN ARBITRATION; THAT THEY WILL NOT CONSOLIDATE THEIR CLAIMS WITH THOSE OF ANY OTHER PERSON OR ENTITY; THAT THEY WILL NOT SEEK CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION TREATMENT FOR ANY CLAIM; AND THAT THEY WILL NOT PARTICIPATE, IN ORDER TO RESOLVE A CLAIM, IN ANY CLASS, COLLECTIVE, OR REPRESENTATIVE ACTION AGAINST THE OTHER (AND/OR AGAINST PERSONS OR ENTITIES ASSOCIATED WITH THE OTHER).

ACCORDINGLY, THE ARBITRATOR SHALL NOT CONSOLIDATE MORE THAN ONE PERSON'S CLAIM, AND MAY NOT PRESIDE OVER ANY FORM OF REPRESENTATIVE, CLASS, OR COLLECTIVE PROCEEDINGS. IN THE EVENT AN ACTION IS BROUGHT IN ARBITRATION ON BEHALF OF MULTIPLE INDIVIDUALS AND/OR ENTITIES, THE ARBITRATOR SHALL HAVE ONLY THE AUTHORITY TO DIVIDE THE ACTION INTO INDIVIDUAL PROCEEDINGS; EACH THEN TO BE HEARD BY AN INDIVIDUAL ARBITRATOR.

SHOULD AN ARBITRATOR RULE ON WHETHER A MATTER MAY PROCEED AS A REPRESENTATIVE, CLASS OR COLLECTIVE ARBITRATION (A "SCOPE OF ARBITRATION RULING"), THE ARBITRATOR SHALL IMMEDIATELY STAY ALL PROCEEDINGS FOR A PERIOD OF THIRTY (30) DAYS FOLLOWING SUCH A RULING TO PERMIT ANY PARTY TO MOVE A COURT OF COMPETENT JURISDICTION TO CONFIRM OR VACATE THE SCOPE OF ARBITRATION RULING BY DETERMINING WHETHER THE SCOPE OF ARBITRATION RULING IS IN ACCORDANCE WITH APPLICABLE LAW AND THE TERMS OF THIS PARAGRAPH 21(B). IF, AT THE END OF SUCH 30 DAY PERIOD, NO PARTY HAS MOVED FOR JUDICIAL REVIEW, THE ARBITRATOR SHALL PROCEED WITH THE ARBITRATION. HOWEVER, IF ANY PARTY HAS SOUGHT JUDICIAL REVIEW DURING THAT PERIOD, THE ARBITRATION SHALL BE STAYED UNTIL THE RULING OF THE COURT AND THE CONCLUSION OF ANY AND ALL APPEALS FROM SUCH RULING.

IN THE EVENT THAT ANY PARTY IS MADE, AT ANY TIME, A MEMBER OF A CLASS IN ANY PROCEEDING BARRED BY THE PROVISIONS OF THIS PARAGRAPH 21(B), THE PARTY AGREES TO "OPT OUT" AT THE FIRST OPPORTUNITY.

C. IF AT ANY TIME THE PROVISIONS OF PARAGRAPH 21(B) THAT REQUIRE CLAIMS ONLY TO BE BROUGHT ON AN INDIVIDUAL BASIS ARE RULED TO BE UNENFORCEABLE, THEN THE ARBITRATION MAY PROCEED AS AN OPT IN COLLECTIVE ACTION GENERALLY UTILIZING THE PROCEDURES ADOPTED UNDER 29 UNITED STATES CODE SECTION 216(b) OF THE FAIR LABOR STANDARDS ACT FOR DETERMINING THE PARTICIPANTS IN SUCH AN ACTION.

UNDER NO CIRCUMSTANCE SHALL AN ARBITRATION PROCEED ON A CLASS ACTION, OPT OUT, BASIS; THE PARTIES SPECIFICALLY INTENDING THAT IF CLASS ACTION PROCEEDINGS ARE DEEMED TO BE LEGALLY REQUIRED FOR ANY CLAIM, THEN THEY AND ALL OTHER RELATED CLAIMS SHALL BE ADMINISTERED BY A COURT OF LAW.

D. SHOULD A PARTY SEEK EMERGENCY RELIEF TO PREVENT OR ABATE ALLEGED IRREPARABLE HARM AND THE PARTIES BE UNABLE TO AGREE TO AN ARBITRATOR WITHIN THREE (3) BUSINESS DAYS, THE PARTIES SHALL JOINTLY PETITION A COURT OF COMPETENT JURISDICTION FOR APPOINTMENT OF A NEUTRAL ARBITRATOR TO PRESIDE OVER THE REQUEST FOR EMERGENCY RELIEF.

E. IN THE EVENT THAT ANY PARTY CHALLENGES, OR IS REQUIRED TO INITIATE PROCEEDINGS TO ENFORCE, THE ARBITRATION REQUIREMENTS OF THIS PARAGRAPH 21, THE PREVAILING PARTY TO SUCH CHALLENGES/ENFORCEMENT PROCEEDINGS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING SUCH ISSUES.

IN ADDITION, SHOULD A PARTY CHALLENGE, OPPOSE, OR FAIL TO CONSENT TO, THE ENFORCEABILITY OF THE ARBITRATION REQUIREMENTS

Date: 10/20/18

Page 6 of 8
Initials:

CONTAINED IN THIS PARAGRAPH 21, ANY PARTY THAT PREVAILS IN OBTAINING ENFORCEMENT OF THESE ARBITRATION PROVISIONS SHALL BE ENTITLED TO AN AWARD OF ALL COSTS, INCLUDING REASONABLE ATTORNEY FEES, INCURRED IN LITIGATING ANY OTHER MATTERS IN A COURT OF LAW THAT WOULD NOT HAVE BEEN NECESSARY HAD THE CLAIM(S) INITIALLY BEEN BROUGHT IN ARBITRATION UNDER THE TERMS OF THIS PARAGRAPH 21.

F. ANY RULING ARISING OUT OF A CLAIM BETWEEN THE PARTIES SHALL, TO THE EXTENT NOT PRECLUDED BY LAW, AWARD COSTS INCURRED FOR THE PROCEEDINGS,

INCLUDING REASONABLE ATTORNEY FEES, TO THE PREVAILING PARTY.

G. THE ARBITRATION PROVISIONS OF THIS PARAGRAPH 21 SUPERSEDE ANY PRIOR ARBITRATION AGREEMENT(S) ENTERED INTO BETWEEN THE CLUB AND THE ENTERTAINER.

ALL PORTIONS OF THIS PARAGRAPH 21 SURVIVE EXPIRATION, TERMINATION, AND/OR CANCELLATION OF THIS AGREEMENT.

22. Superseding Effect. The execution of this Agreement by the Parties shall terminate any similar agreement or other similar contract currently in effect between the Parties.

(REMAINDER OF PAGE INTENTIONALLY LEFT BLANK)

This Agreement is immediately terminated if Entertainer is not of legal age. Entertainer specifically represents that she is of lawful age or older, that she has provided appropriate identification verifying her age, and that such identification is valid and authentic.

BY SIGNING THIS DOCUMENT, ENTERTAINER REPRESENTS THAT:

- SHE HAS FULLY READ THIS AGREEMENT PRIOR TO SIGNING IT;

- SHE HAS BEEN PROVIDED A COPY OF THIS AGREEMENT AND HAS HAD OPPORTUNITIES TO BOTH ASK QUESTIONS REGARDING ITS CONTENT AND HAVE IT REVIEWED BY PERSONS OF HER CHOICE, INCLUDING BY ATTORNEYS AND ACCOUNTANTS, BEFORE SHE HAS SIGNED IT; AND

- SHE UNDERSTANDS AND AGREES TO BE BOUND BY ALL OF THE TERMS OF THIS AGREEMENT.

"CLUB"

Daddy Rabbits

"ENTERTAINER"

_____
(Signature)

By: _____
(Signature)

Tony Poteet
(Printed Name)

Reyana Bank
(Printed Name)

SASHA
(Stage Name)

REDACTED

Its: Area Supervisor
(Position)

REDACTED
(Street Address)

Date: _____

_____
(City, State, Zip Code)

_____
(Entertainer's license/ Permit Number-if applicable)

REDACTED
_____
(Entertainer's I.D. Number)

"PREMISES"

3206 Broad Rock Blvd
Richmond VA

Date: 1/10/2018

Date: 01/10/2018

14

## EXHIBIT "A"

The parties acknowledge and agree that the following terms are incorporated into the Entertainer Licensing Agreement entered into between Entertainer and the Club:

1.     **Licensing Fees/Base Licensing Fees.** Pursuant to paragraph 15 of the Entertainer Licensing Agreement, the parties agree that Entertainer shall pay both "Base" and "Additional" Licensing Fees as set forth below.  The daily Show Date Base Licensing Fee shall be as follows*:

| DAY ENTERTAINMENT SESSION | | EVENING ENTERTAINMENT SESSION | |
|---|---|---|---|
| Monday – Sunday | | Sunday-Thursday | |
| 12:00 noon to 8:00 pm | $15.00 | 8:00 pm to Close: | ~~$25.00~~ 20.⁰⁰ $22 RD |
| Late Arrival- | $5.00 per hr | Friday & Saturday: | ~~$50.00~~ 40.⁰⁰ $42 RD |
| | | Late Arrival- | $10.00 per hr |

*The times in the Base Licensing Fee schedule above apply to when the Entertainer is dressed and ready to perform, regardless of the time when she arrives at the Club or has scheduled herself to begin to perform on the Premises.

2.     **Additional Licensing Fees.**  Pursuant to paragraph 15 of the Entertainer Licensing Agreement, Entertainer shall pay Additional Licensing Fees to the Club as follows for the following types of personal dances:

a.   Individual Dances and Time Only VIP Room Dances will be split 50% to the Entertainer and 50% to the Club.
b.   Champagne Rooms will be split with Bottle pricing consideration.

3.     Any term of the Entertainment Licensing Agreement entered into between Entertainer and the Club not specifically modified by this Exhibit A shall remain in full force and effect.

**"CLUB"**

Circle 2 Inc
d/b/a Daddy Rabbits GC

By: _____
                     [signature]

_Troy Pickett_
                [printed name]

Its: _Area Supervisor_

Date: _____

**"ENTERTAINER"**

_____
                     [signature]

_Reyana Bush_
                [printed name]

_SASHA_
                [stage name]

Date: _8/16/2018_

Page 1 of 1

RB

